### THE SOUTHLANDS.

District Court, S. D. Texas, Houston Division.
August 14, 1928.

No. 122.

**1. Shipping ⊚⟹123(2)—Stowage on deck of shipment on clean bill of lading constitutes "deviation," in absence of port custom so to ship.**

Stowage on deck of shipment on a clean bill of lading amounts to a "deviation," unless custom of port so to ship is established.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Deviation (in Law of Shipping).]

**2. Accord and satisfaction ⊚⟹2(2)—Payment of claim for lumber converted by ship's agent held not "accord and satisfaction," as respects claim for lumber washed overboard.**

Steamship company's payment of shipper's claim for amount of deck-stowed lumber, converted by ship's agent at destination, *held* not to constitute an "accord and satisfaction," as respects claim for lumber jettisoned or washed overboard during storm.

**3. Insurance ☞606(3)—Where insurers paid shipper's cargo loss, shipper had no authority to make accord and satisfaction, to affect insured's right of subrogation.**

Where shipper had been paid by its cargo underwriters for lumber jettisoned or washed overboard in storm, it had no authority to settle claim therefor against ship, so as to constitute an accord and satisfaction, as respects underwriter's right of subrogation.

**4. Shipping ☞140(1)—Deviation resulting from improper stowage of shipment held to deprive ship of benefit of bill of lading provision giving it benefit of cargo insurance.**

Where there was a deviation as respects lumber shipment on a clean bill of lading, because lumber was stowed on deck, effect thereof was to abrogate contract of carriage, and deprive ship of benefit of any of restrictive clauses, including clause giving ship benefit of cargo insurance, and shipper was therefore not precluded from recovering, for benefit of insurers from carrier, for loss of lumber jettisoned or washed overboard, amount of loss covered by insurance which underwriters had paid.

In Admiralty. Libel by the Kirby Lumber Company against the steamship Southlands; the Lone Star Steamship Company, claimant. Decree for libelant.

Carl Stearns and Fulbright, Crooker & Freeman, all of Houston, Tex., for libelant.

W. E. Cranford and Armstrong & Cranford, all of Galveston, Tex., for respondent.

HUTCHESON, District Judge. This is a suit for loss of cargo of lumber stowed on deck, as the result of being lost overboard and/or jettisoned in a storm.

[1] The shipment being upon a clean bill of lading, it is conceded that stowage on deck amounts to a deviation (see The Delaware, 14 Wall. [81 U. S.] 579, 20 L. Ed. 779; The St. Johns N. F. [C. C. A.] 280 F. 553; see, also, same case in Supreme Court, 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201, 1923 A. M. C. 1132), unless respondent can prove a custom of the port to so ship. The Delaware, supra; Rosenberg Bros. & Co. v. United States Ship. Board E. F. Corp. [D. C.] 7 F. [2d] 893, 1925 A. M. C. 1427; Id. [C. C. A.] 12 F.[2d] 721, 1926 A. M. C. 855; The Gualala [C. C. A.] 178 F. 402. I have carefully examined the evidence in the light of the authorities, and I find that the custom alleged and relied upon did not exist.

[2] Respondent contends further that there was an accord and satisfaction growing out of the assertion by the Kirby Lumber Company and payment by the respondent of a claim for the amount of deck-stowed lumber, not jettisoned or washed overboard, but converted by the agent of the ship at destination. To this claim libelant replies (1) that there was no settlement of the claim in controversy; and (2) if there was, the libelant was powerless to effect the settlement, since, as plainly appears in the correspondence, libelant had been paid by its cargo underwriters for the lumber which was jettisoned and washed overboard, and, the insurance companies having a right in law and under their contracts to subrogation to the claim of libelant against the carrier, libelant was without power to settle the claim, if it had attempted to do so.

I agree with libelant that the claim now in suit was never submitted for settlement or compromise, and that while the form of the release presented to, but not signed by, the Kirby Lumber Company, covered all claims arising out of the cargo stowed on deck, there was never any contention between libelant and respondent as to the claim now in suit, and it would be a giving effect to form, rather than substance, to say that the parties had under discussion, and made a compromise of, the claim in suit.

[3] In addition, I think it plain that libelant had no authority to make such an accord and satisfaction, and that the evidence shows plainly that it was understood between libelant and respondent that this matter, having been taken up with the insurance company, was not then at issue between libelant and respondent.

[4] Finally, respondent claims that, because of the clause in the bill of lading giving the carrier the benefit of cargo insurance, the libelant cannot recover against the carrier, for the benefit of the insurers, the amount of loss which was covered by insurance, and which the underwriters had already paid. Whether respondent could successfully invoke the clause in the absence of deviation (see Luckenbach v. W. J. McCahan Sugar Ref. Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522; The Turret Crown [C. C. A.] 297 F. 766, 1924 A. M. C. 253), it is not necessary to consider, for there was a deviation as to this lumber, the effect of which was to abrogate the contract and deprive the ship of the benefit of any of the restrictive clauses. See Rosenberg Bros. & Co. v. United States Ship. Board E. F. Corp. (D. C.) 1925 A. M. C. 1427; Blumenthal v. United States (D. C.) 21 F.(2d) 798, 1927 A. M. C. 1726; St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral Commercial Do Rio De Janeiro, 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201; The Willdomino

(C. C. A.) 300 F. 5, 1924 A. M. C. 903; G. F. Brady, 1927 A. M. C. 1621.

Let a decree go for libelant for the amount sued for, with interest and costs.